## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* AKEEL & VALENTINE, PLC, | Case No. 24 CV 00047 |
| Plaintiff-Relator, | Honorable Sunil R. Harjani |
| v. | |
| NAPLETON AUTO GROUP, INC., et al., | |
| Defendants. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff-Relator Akeel & Valentine PLC brought a *qui tam* action against thirty-eight automobile dealerships across the country, their Illinois parent company, and four individuals. The United States has declined intervention, and Relator now proceeds on its own. In its Second Amended Complaint, Relator alleges that the dealerships applied for "Paycheck Protection Program" loans during the COVID-19 pandemic in 2020 and 2021, and certified that no "Associate" (as defined by the Small Business Administration's regulations) was under a felony indictment at the time of application. Relator further alleges that one of the individual Defendants, Eddie Napleton, was actually an Associate and under a felony indictment at the time of all applications. Hence, Relator has sued Defendants under the False Claims Act for over $36 million in forgivable loans allegedly obtained through fraudulent misrepresentations. Defendants now move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, contending that the allegations are subject to the public disclosure bar of Title 31, United States Code, Section 3730(e)(4)(A), and, alternatively, for failing to state a claim under Rule 9(b)'s heightened pleading standard.

## Background

Relator is a law firm in Michigan that has experience bringing and prosecuting *qui tam* actions under the False Claims Act (FCA). [51] ¶¶ 5, 7.[1] Defendants are thirty-eight automobile dealerships located in Illinois, Florida, Georgia, Indiana, Minnesota, Missouri, Pennsylvania, and Wisconsin (the "Subsidiary Defendants"); their parent corporation, American Automotive Services, Inc., doing business as Napleton Auto Group (NAG); and four individuals. [51] ¶¶ 9–51. Among the individual Defendants is Edward W. Napleton, Jr., also known as Eddie Napleton, who Relator alleges was the director of operations of NAG in 2020 and 2021, as well as the owner, president, director, or manager of many of the Subsidiary Defendants. *Id.* ¶ 10.

According to the Second Amended Complaint (SAC), Defendants participated in the "Paycheck Protection Program" (PPP) initiated during the COVID-19 pandemic. Congress enacted the Coronavirus Aid, Relief, and Economic Security Act in 2020 to provide emergency financial assistance, including forgivable loans for qualifying small businesses (PPP loans) administered by the Small Business Administration (SBA). [51] ¶¶ 60–87. To qualify, a small business had to make certain good faith certifications and acknowledgements in its application, including certifications that it was eligible to receive a PPP loan under statutory and regulatory requirements, and that its application was true, accurate, and free of any false statements. *Id.* ¶ 68. PPP loans were issued in multiple rounds, and recipients could apply for the loans to be forgiven up to the full amount. *Id.* ¶¶ 69, 71–72.

The SAC states that each Subsidiary Defendant applied for, received, and was forgiven for at least one PPP loan, which totaled over $36 million of loan forgiveness by the United States. *Id.*

---

[1] For purposes of reviewing this motion to dismiss under Rule 12(b)(6), the Court accepts as true, as it must, all factual allegations in the complaint. *Heredia v. Cap. Mgmt. Servs., L.P.*, 942 F.3d 811, 814 (7th Cir. 2019).

¶¶ 1, 2, 107–11.  Consequently, the Subsidiary Defendants—and the other Defendants who are in control of the Subsidiary Defendants—allegedly certified that they were eligible to receive a PPP loan under the existing rules. *Id.* ¶¶ 3–4, 68.  However, Relator alleges that Eddie Napleton, as NAG's director of operations, qualified as an "Associate" of each Subsidiary Defendant at the time, as defined in SBA regulations. *Id.* ¶¶ 83, 98, 100.  And at the time of these PPP loan applications, Eddie Napleton, allegedly had a pending felony charge. *Id.* ¶¶ 92–93.  Therefore, Relator alleges that the Subsidiary Defendants were ineligible for PPP loans under Title 13, Code of Federal Regulations, Section 120.110(n) at the time of application. *Id.* ¶¶ 82, 120, 128, 134. Based on this information, Relator brought three counts under the FCA against Defendants for knowingly and intentionally presenting, or causing to be presented, PPP loan applications that misrepresented the Subsidiary Defendants as eligible applicants. *Id.* ¶¶ 119, 128, 134.

Nearly a year after this action was initiated, the government declined to intervene. [13] ¶ 1. Shortly thereafter and before issuing summons, Relator amended the Complaint to correct entity names and loan amounts. [18, 19].  Certain Defendants then moved to reset the deadlines because they anticipated another amendment after discussions with Relator's counsel. [49] at 1.  This Court granted leave to Relator to file a second amended complaint, which it timely submitted. [50, 51].

Defendants have now moved to dismiss the SAC under Rule 12(b)(6) of the Federal Rules of Civil Procedure based on the FCA's public disclosure bar and, alternatively, Relator's failure to state a claim under the heightened pleading standard of Rule 9(b). [54].  They attached to their memorandum of law two news articles describing Eddie Napleton's felony charge.  One article from 2019 states that his "family owns the Napleton Auto Group with numerous dealerships in suburban Chicago and other states." [55-1] at 2.  The other article from 2021 describes Eddie Napleton as the "director of operations at the car empire his great-grandfather built in Chicago"

and the "executive who helps oversee the operations of roughly 75 franchised dealerships." [55-2] at 3.

## Legal Standard

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court construes the complaint in the light most favorable to the nonmoving party, accepts well-pleaded facts as true, and draws all inferences in the nonmoving party's favor. *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016).

Claims arising under the FCA "are subject to Rule 9(b)'s heightened pleading standard," which requires a complaint to "state with particularity the circumstances constituting fraud or mistake." *Lanahan v. County of Cook*, 41 F.4th 854, 861–62 (7th Cir. 2022) (quoting Fed. R. Civ. P. 9(b)). In other words, the complaint must state the "who, what, when, where, and how of the fraud." *Id.* at 862.

## Discussion

### I.   Procedural Arguments

Defendants first move for dismissal based on the FCA's statutory public disclosure bar under Rule 12(b)(6). Relator responds that the public disclosure bar is an affirmative defense that should not be considered on a Rule 12(b)(6) motion. Relator also asserts that the burden is on Defendants to prove such an affirmative defense, and that their exhibits to their brief should be disregarded. Although the Seventh Circuit has not spoken on whether the public disclosure bar is

4

an affirmative defense, its jurisprudence and acknowledgement of other circuits' treatment of the public disclosure bar provide guidance, as further detailed below, such that the Court determines to treat the bar as an affirmative defense.

### A.     The FCA's Public Disclosure Bar as an Affirmative Defense

"The FCA permits 'both the Attorney General and private *qui tam* relators to recover from persons who make false or fraudulent claims for payment to the United States.'" *Bellevue v. Universal Health Servs. of Hartgrove, Inc.*, 867 F.3d 712, 716 (7th Cir. 2017) (quoting *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 283 (2010)). Generally, a relator must prove that the defendant "knowingly present[ed], or cause[d] to be presented, a false or fraudulent claim for payment or approval" to the government. *Cause of Action v. Chi. Transit Auth.*, 815 F.3d 267, 272 (7th Cir. 2016) (quoting 31 U.S.C. § 3729(a)(1)).

In order to "prevent parasitic lawsuits by 'opportunistic plaintiffs who have no significant information to contribute of their own,'" Congress enacted the public disclosure bar. *Bellevue*, 867 F.3d at 716 (quoting *Graham Cnty.*, 559 U.S. at 294). Specifically, the FCA states:

> The court shall dismiss an action or claim under this section, unless opposed by the Government, if *substantially the same allegations or transactions* as alleged in the action or claim were *publicly disclosed*—
>     (i)     in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
>     (ii)    in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
>     (iii)   from the news media,
> unless the action is brought by the Attorney General or the person bringing the action is an *original source* of the information.

31 U.S.C. § 3730(e)(4)(A) (emphases added). It further defines "original source" to mean an individual who either "has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based" prior to a public disclosure, or "has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and

who has voluntarily provided the information to the Government before filing an action under this section." *Id.* § 3730(e)(4)(B).

Prior to the 2010 amendments, the Supreme Court made clear that the public disclosure bar was a question of subject matter jurisdiction. *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 467–70 (2007). However, Congress removed the phrase upon which the *Rockwell* holding was based—"[n]o court *shall have jurisdiction* over an action"—and replaced it with "[t]he court *shall dismiss* an action or claim under this section." *Bellevue*, 867 F.3d at 717 (emphases added). As a result, most circuits have held that the public disclosure bar is no longer jurisdictional. *See United States ex rel. Fiorisce, LLC v. Colo. Tech. Univ., Inc.*, 130 F.4th 811, 822 & n.9 (10th Cir. 2025) (collecting cases); *United States ex rel. O'Connor v. USCC Wireless Inv., Inc.*, 128 F.4th 276, 284 (D.C. Cir. 2025) ("[T]he public disclosure was previously a jurisdictional limit but is now an affirmative defense."). The First and Eighth Circuits have not yet ruled that the public disclosure bar is nonjurisdictional, but they have indicated their agreement with this proposition. *See United States ex rel. Banigan v. PharMerica, Inc.*, 950 F.3d 134, 136 n.1 (1st Cir. 2020); *United States ex rel. Ambrosecchia v. Paddock Lab'ys, LLC*, 855 F.3d 949, 953–54 (8th Cir. 2017).

The Seventh Circuit has twice noted the holdings of other circuits and has found, in accordance with these holdings, that the Supreme Court determined the jurisdictional nature of Section 3730(e)(4)'s prior version was based on the phrase "[n]o court shall have jurisdiction over an action under this section," which has been removed. *Bellevue*, 867 F.3d at 717; *Cause of Action*, 815 F.3d at 271 n.5. However, it has not yet explicitly held that public disclosure bar is non-jurisdictional. *Bellevue*, 867 F.3d at 717; *Cause of Action*, 815 F.3d at 271 n.5. To date, the Seventh Circuit has only held that claims concerning alleged conduct that occurred after the 2010 amendments are subject to the pre-amended version of Section 3730(e)(4)(A) and are treated as

6

jurisdictional when the claims also concern alleged conduct that occurred before the amendments. *Bellevue*, 867 F.3d at 717–18; *see also Foster v. PHH Mortg.*, 2024 WL 5103010, at *2 (7th Cir. Dec. 13, 2024) (noting the 2010 amendment but only holding that "when, as here, some of the alleged misconduct occurred pre-amendment, we treat the public-disclosure bar as jurisdictional").

Here, the alleged conduct occurred only after 2010, so the amended version of Section 3730(e)(4) applies. The Seventh Circuit has not faced such a case. To determine the proper characterization of the public disclosure bar, the Court considers the holdings of other circuit courts.

On the amended statute, the D.C. Circuit explained that unless Congress "clearly states" that a statutory limitation is jurisdictional, "courts should treat the restriction as nonjurisdictional." *O'Connor*, 128 F.4th at 284 (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515–16 (2006)); *see also United States ex rel. Beauchamp v. Academi Training Ctr.*, 816 F.3d 37, 40 (4th Cir. 2016) ("[T]he revised statute deleted the jurisdiction-removing language previously contained in § 3730(e)(4) and replaced it with a generic, not-obviously-jurisdictional phrase, making it clear that the public-disclosure bar is no longer a jurisdiction-removing provision." (cleaned up)). This principle was demonstrated in *United States v. Wong*, in which the Supreme Court found that the Federal Tort Claims Act's statute of limitations was not jurisdictional despite the statute stating that an untimely case "shall be forever barred." 575 U.S. 402, 411 (2015) (citing 28 U.S.C. § 2401(b)). It held that such mandatory language was "of no consequence" because it did not "speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." *Id.* (citation omitted). This principle is applicable to Section 3730(e)(4)'s language of "shall dismiss" under the heading of "certain actions barred," which is equivalent to the language considered in *Wong* stating that the actions described "shall be forever barred." *See Wong*, 575 U.S. at 411. Even

7

though "shall" is mandatory, that is "of no consequence" for determining Section 3730(e)(4)'s jurisdiction *See id.* And no other language in the amended statute "clearly states" that the restriction affects a court's jurisdiction. *See O'Connor*, 128 F.4th at 284.

Expanding upon Congress's removal of language that constitutes a "clear and explicit withdrawal of jurisdiction," *see Rockwell*, 549 U.S. at 468 (emphasis omitted), the Third Circuit observed that Congress made a "deliberate selection of language so differing from that used" in the prior version, which "indicates that a change of law was intended," *United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 300 (3d Cir. 2016) (quoting *Brewster v. Gage*, 280 U.S. 327, 337 (1930)). Not only did Congress remove jurisdictional language, but it added language that "provides that the government can oppose dismissal, allowing the case to proceed even if the public disclosure provision would otherwise apply," which could not be true for a jurisdictional defect. *United States ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 (11th Cir. 2015). This context confirms the reading of Section 3730(e)(4) as nonjurisdictional. *See Wong*, 575 U.S. at 411.

As held by other circuit courts, if the public disclosure bar is not jurisdictional, it's "proper characterization" is an affirmative defense. *See United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 737 n.1 (10th Cir. 2019); *United States ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 80 (2d Cir. 2017); *Beauchamp*, 816 F.3d at 40. The Court finds persuasive these holdings of the other circuit courts that the removal of the jurisdictional phrase conclusively established the bar is no longer a jurisdictional requirement, and thus the default position is that the bar is an affirmative defense.

With that conclusion, the Court addresses Relator's two remaining arguments on the affirmative defense. First, Relator argues that affirmative defenses generally do not justify

8

dismissal under Rule 12(b)(6).  It also notes the exception that applies when the complaint "set[s] forth everything necessary to satisfy the affirmative defense" but argues that the exception does not govern here. *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) (citation omitted).

In general, the Seventh Circuit has cautioned that motions to dismiss on the basis of an affirmative defense should be brought under Rule 12(c) rather than Rule 12(b)(6). *Watkins v. Mohan*, 144 F.4th 926, 940 n.8 (7th Cir. 2025) (quotation omitted).  This is because affirmative defenses "frequently turn on facts not before the court at the pleading stage," so the "mere presence of a potential affirmative defense does not render the claim for relief invalid." *Hyson USA*, 821 F.3d at 939 (cleaned up).  However, this pleading principle is an "abstract proposition, that is usually true because complaints do not have to anticipate affirmative defenses to survive a motion to dismiss." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).  A district court may review the complaint to see if it establishes all the elements of the defense and if so, it can be dismissed. *See, e.g.*, *Ferguson v. Mount Sinai Med. Ctr.*, 2024 WL 3272123, at *2 (7th Cir. July 2, 2024) (affirming the district court's dismissal of complaint that "set forth everything necessary to satisfy the affirmative defense" of exceeding the statute of limitations); *Lenz v. Robert W. Baird & Co.*, 697 F. App'x 456, 457 (7th Cir. 2017) (affirming the district court's dismissal where plaintiff "pleaded himself out of court by alleging" facts that supported statutory immunity for the defendant); *Walker v. City of Chicago*, 596 F. Supp. 3d 1064, 1070–71 (N.D. Ill. 2022) (granting defendants' motion to dismiss plaintiff's false arrest claim as time-barred).  Simply because this Court decided to treat the public disclosure bar as an affirmative defense does not automatically warrant a denial of the Rule 12(b)(6) motion.

Relator also asserts that the burden to prove the public disclosure bar as an affirmative defense falls on Defendants. Historically, the Seventh Circuit has put the burden on the relator to prove its allegations were not publicly disclosed and that it was an original source. *Cause of Action*, 815 F.3d at 274; *Bellevue*, 867 F.3d at 718. However, that burden was imposed because the public disclosure bar was jurisdictional. *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009) ("At each stage of the *jurisdictional analysis*, the plaintiff bears the burden of proof." (emphasis added)); *Cause of Action*, 815 F.3d at 274 (citing *Glaser*); *Bellevue*, 867 F.3d at 718 (quoting *Cause of Action*). That does not apply here, where the Court analyzes the public disclosure bar as a nonjurisdictional affirmative defense. The burden should not be on Relator who "need not anticipate and attempt to plead around affirmative defenses" and rather should be on Defendants to show that the factual allegations at this stage "unambiguously establish all elements of the defense." *Hyson USA, Inc.*, 821 F.3d at 939.

## B. Judicial Notice

As a final procedural matter, Defendants request the Court to take judicial notice of news articles attached to its memorandum of law. However, Defendants made that request in their reply brief, after Relator pointed out this deficiency.

A court may take judicial notice of public records without converting a Rule 12(b)(6) motion to one for summary judgment under Rule 56. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *see also Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022) ("It's well established that judges may take judicial notice of matters of public record when ruling on a motion to dismiss."). However, under Rule 201(b) of the Federal Rules of Evidence, "a court may judicial notice only a fact that is not subject to reasonable dispute." *Tobey v. Chibucos*, 890 F.3d 634, 648 (7th Cir. 2018) (disapproving of judicial notice taken of court records of appellant's arrest date

because the date was subject to reasonable dispute and court records "may contain erroneous information").

The fact that Defendants only requested judicial notice in their reply brief does not prevent the Court from taking judicial notice if appropriate. Relator cites to no authority that would support such an assertion, and declining judicial notice is not required to be fair to Relator. Consider *DiFranco v. Gordon*, 2025 WL 2522661 (N.D. Ill. Sept. 2, 2025). In *DiFranco*, the defendants did not attach anything to their motions to dismiss. *Id.* at *4. After the plaintiff's opposition brief pointed out that the defendants failed to ask the court to take judicial notice of any state court documents, the defendants attempted to remedy their shortcoming by attaching four state court documents as exhibits to their reply brief and requesting that the court take judicial notice. The district court held that the defendants' request was too late, because the plaintiff was deprived an opportunity to "contest the authenticity of these documents (if he wished to do so), make arguments about what they say, or draw the court's attention to any other state court documents he contends are relevant to the collateral estoppel analysis." *Id.*

While Defendants also made their request for judicial notice in their reply brief, it was a request pertaining to documents attached as exhibits to their original motion. In its opposition brief, Relator pointed out the lack of a request, but in contrast to *DiFranco*, it had a chance to respond. Relator made arguments about whether the statements in the exhibits are sufficient to enforce the public disclosure bar, and they pointed to other documents, namely the SAC and its exhibits, to contend that the public disclosure bar does not exist. [58] at 5–7. Relator conceded that two of the three statements at issue were publicly disclosed. [58] at 4 n.2. And while Relator disputed that the third statement—that Eddie Napleton is an Associate of the Subsidiary Defendants—was publicly disclosed in these documents, it did not create a reasonable dispute as

11

to the authenticity of the exhibits and what they said. Thus, Defendants' articles are only judicially noticed for the fact that certain information was publicly disclosed. *See, e.g.*, *Cause of Action*, 815 F.3d at 277 n.13 (taking judicial notice of reports posted on the Illinois Auditor General website as part of its adjudication of the public disclosure bar); *United States ex rel. Bogina v. Medline Indus., Inc.*, 2015 WL 1396190, at *3 n.7 (N.D. Ill. Mar. 24, 2015), (taking judicial notice of news articles attached to motions to dismiss that were not contested by plaintiff and finding they were not subject to reasonable dispute and capable of accurate and ready determination "namely, verification of their publication by the news sources cited"), *aff'd*, 809 F.3d 365 (7th Cir. 2016); *United States ex rel. John v. Hastert*, 82 F. Supp. 3d 750, 764 (N.D. Ill. 2015) ("We can properly take judicial notice of the Tribune articles attached to [plaintiff's] motion to dismiss to conclude that the information contained in [plaintiff's] complaint has previously been publicly disclosed and was in the public realm."); *see also, e.g.*, *Bardney v. United States*, 151 F.3d 1032 (7th Cir. 1998) ("As it is indisputable that the articles were in fact published, the existence of the articles was a proper subject for judicial notice."); *Butler v. Hogshead-Makar*, 2023 WL 4663644, at *6 (N.D. Ill. July 20, 2023) (taking judicial notice of news articles not for their truth but for "the fact that the articles were published and that they say what they say"); *City of Chicago ex rel. Rosenberg v. Redflex Traffic Sys., Inc.*, 2016 WL 4203835, at *10 n.9 (N.D. Ill. Aug. 8, 2016) (taking judicial notice of "the fact of publication and the content of the articles (as distinguished from the truth or accuracy of their content)").

## II.    Application of the Public Disclosure Bar

Having determined that the Defendants' argument on the public disclosure bar is procedurally proper, the Court turns to whether Defendants have met their burden to prove this affirmative defense. This requires consideration of all materials appropriate at the Rule 12(b)(6)

stage, namely, "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky*, 675 F.3d at 745 n.1; *see also Holmes v. Marion Cnty. Sheriff's Off.*, 141 F.4th 818, 822 (7th Cir. 2025) (a complaint may fail to state a claim when an affirmative defense "is clear from the face of the complaint, which includes documents incorporated into the complaint by reference and public records of which the court may take judicial notice").

The parties agree that the Seventh Circuit's three-step analysis governs to determine whether Section 3730(e)(4)(A)'s public disclosure bar applies: (i) whether the relator's allegations have been "publicly disclosed"; (ii) if so, whether the lawsuit is "based upon," *i.e.*, "substantially similar to," the publicly disclosed allegations; and (iii) if so, whether the relator is an original source of the information upon which the lawsuit is based. *Bellevue*, 867 F.3d at 718.

## A. Publicly Disclosed Information

Defendants argue that Relator's allegations of fraud were placed in the public domain. Specifically, they identify three factual allegations that constitute the "critical elements" of the alleged fraud: (i) the government online database PandemicOversight.gov discloses Defendants' applications for PPP loans and thus their certified compliance with the rules of those loans; (ii) the articles they attach to their brief report that Eddie Napleton was under indictment for a felony at the time of the applications; and (iii) the same articles disclose that Eddie Napleton was an "Associate" of the Subsidiary Defendants. Relator does not contest the public disclosure of the first two allegations but does argue that the third has not been publicly disclosed. According to Relator, at most, the articles only reveal a mere association between Eddie Napleton and the Subsidiary Defendants rather than sufficient information to deduce that Eddie Napleton meets the

regulatory definition of "Associate." Further, it argues that the purported public disclosures do not allege fraud or support the inference of fraud.

The allegations in a complaint are publicly disclosed "when the critical elements exposing the transaction as fraudulent are placed in the public domain." *Cause of Action*, 815 F.3d at 274 (citation omitted). "This definition presents two distinct issues: whether the relevant information was placed in the public domain, and if so, whether it contained the critical elements exposing the transaction as fraudulent." *Bellevue*, 867 F.3d at 718 (quoting *Cause of Action*, 815 F.3d at 274). As to the first issue, it is well recognized that "material is in the public domain when the information is open or manifest to the public at large." *Cause of Action*, 815 F.3d at 274. Disclosures on government websites and in news articles have been the grounds for barring previous FCA actions. *See, e.g.*, *Cause of Action*, 815 F.3d at 277 n.13; *Bogina*, 2015 WL 1396190, at *3 n.7; *John*, 82 F. Supp. 3d at 764. As to the second issue, there is public disclosure when the public domain holds an explicit allegation of fraud or "facts establishing the essential elements of fraud—and, consequently, providing a basis for the inference that fraud has been committed." *Cause of Action*, 815 F.3d at 278. The government can make that inference on its own where the relator does not possess personal knowledge that was required to make the inference. *Bellevue*, 867 F.3d at 719.

Here, Defendants contend that the public disclosures contained the critical elements of the alleged fraud. Defendants' primary support for its argument is the Seventh Circuit's decision in *Cause of Action*. In *Cause of Action*, the Seventh Circuit considered the Chicago Transit Authority's (CTA) allegedly fraudulent reporting of "vehicle revenue miles," which it was required to submit for grants. 815 F.3d at 279–80. The statutory definition of "vehicle revenue miles" explicitly excluded miles accumulated while the vehicle was not in service, but relator alleged that

14

the CTA included these miles in its reporting. *Id.* The CTA claimed that the public disclosure bar applied because a previous audit report disclosed that the CTA was incorrectly classifying these miles. *Id.* at 280. The Seventh Circuit found that the audit report provided a sufficient basis to infer that the CTA knew it was presenting a false set of facts to the government. *Id.* at 279–80. The definition of "vehicle revenue miles" was clear about miles that should be excluded, a direct contravention of this limitation would necessarily increase the CTA's grant allocations, and it was not equally plausible to infer that the CTA mistakenly believed otherwise. *Id.*

In its ruling, the Seventh Circuit distinguished its decision from *United States ex rel. Absher v. Momence Meadows Nursing Center, Inc.*, 764 F.3d 699 (7th Cir. 2014), in which an inference of fraud was not appropriate. In *Absher*, the defendant nursing center made alleged misrepresentations in Medicare and Medicaid reimbursement submissions by certifying it was providing "appropriate and quality care" to its residents. *Id.* at 703. The defendant presented prior government surveys and penalty proceedings about non-compliant care to argue that the public disclosure bar applied. *Id.* at 708. However, the Seventh Circuit found those disclosures to be insufficient because they did not establish that the defendant knew it was misrepresenting the standard of care in its certifications. *Id.* at 709 n.10. The defendant was required to comply with a "wide variety of regulations and standards of care that are part of Medicare and Medicaid's complex regulatory scheme." *Id.* at 703. In *Cause of Action*, the Seventh Circuit called those certifications "qualitative judgments" that were absent in the CTA's reporting of miles and that did not prevent an inference of fraud. 815 F.3d 279–80; *see also Bellevue*, 867 F.3d at 719 (making the same distinction from *Absher* and inferring fraud from the public disclosure of defendant psychiatric hospital exceeding its 150-bed capacity but certifying that it did not exceed capacity for Medicaid reimbursements).

15

On the specific conduct at issue here, Defendants cite two out-of-circuit cases that involved a relator who sued a defendant for allegedly submitting false certifications about its eligibility in order to receive PPP loans. *United States ex rel. Relator LLC v. Kellog*, 2025 WL 897439 (S.D. Cal. Mar. 24, 2025) is particularly relevant because of its similar facts. In *Kellog*, a relator brought suit against a golf club for applying for PPP loans on the certification that it did not limit the number of memberships for reasons other than capacity and thus was an eligible business. *Id.* at *1. The district court found that the defendants' application was publicly disclosed on PandemicOversight.gov, and news media sources that stated the defendant was "exclusive." *Id.* at *3. Thus, the material elements of the alleged fraud were publicly disclosed and allowed the inference that fraud had been committed. *Id.* at *4.

Relator's rebuttal is that the association described in Defendants' news articles are not the same as that described in the SAC. However, the Court finds that there is sufficient overlap. The SBA has defined "Associate" to include "[a]ny individual . . . in control of" the small business. 13 C.F.R. § 120.10.[2] As Relator points out in its brief, the ordinary meaning of "control" means one with the "direct or indirect power to govern the management and policies of an entity," "the power or authority to manage, direct, or oversee," and "to exercise power or influence over" an entity. [58] at 11 (citing Black's Law Dictionary and Merriam-Webster Dictionary). The *Palm Beach Post* article submitted by Defendants states that Eddie Napleton is the "director of operations" of NAG and "helps oversee the operations of roughly 75 franchised dealerships," which encapsulates all the Subsidiary Defendants. [55-2] at 3. This is quite clearly control.

---

[2] In full, the regulation defines an "Associate" of a small business as "(i) [a]n officer, director, owner of more than 20 percent of the equity, or key employee of the small business; (ii) [a]ny entity in which one or more individuals referred to in paragraphs (2)(i) of this definition owns or controls at least 20 percent; and (iii) [a]ny individual or entity in control of or controlled by the small business (except a Small Business Investment Company ("SBIC") licensed by SBA)." 13 C.F.R. § 120.10(2).

Given the prescribed definition of "Associate," Defendants did not have to make the same type of "qualitative judgment[]" about whether Eddie Napleton made the Subsidiary Defendants ineligible for PPP loans as the defendant in *Absher* did concerning whether it was providing the right standard of care among a "wide variety" of standards under a "complex regulatory scheme." 764 F.3d at 703. Rather, this case aligns more closely with *Cause of Action* and *Kellog*. The Seventh Circuit in *Cause of Action* found it important that the applicable regulations "specifically proscribe[d] the classification of" miles that were to be calculated and certified upon submission. 815 F.3d at 280. Similarly, the regulations for PPP loans not only explicitly state that an applicant must not have an Associate who is under indictment for a felony but also proscribes who qualifies as an Associate. 13 C.F.R. §§ 120.10(2), 120.110(n). The regulations specify that an Associate includes any individual in control, and in light of the broad, ordinary meaning of "control," the definition is satisfied by Eddie Napleton's disclosed position of director of operations and disclosed role of overseeing roughly 75 dealerships. As in *Kellog*, Relator asserts an alleged fraud based on the combination of publicly available information regarding a PPP loan application and an online article that gives rise to the inference that there was an alleged misrepresentation in the certification. *See* 2025 WL 897439, at *3. From this public disclosure, the government would be able to infer that a fraud has been committed.

Importantly, the SAC does not allege that Relator possesses direct knowledge of information that is not equally accessible by the government. Its allegations necessarily require it to make the same inferences about fraud that the government would have to make in order to bring suit, and "[t]here is no reason that the government could not have made the same inference[s]" based on the PPP loan database and news articles. *See Bellevue*, 867 F.3d at 719. In sum, the elements of the alleged fraud have been placed in the public domain and thus publicly disclosed.

### B. Substantially Similar

For the second step, the Seventh Circuit has provided several factors to determine whether a complaint's allegations are substantially similar to the publicly disclosed allegations. Those are "whether relators present genuinely new and material information beyond what has been publicly disclosed; whether relators allege a different kind of deceit; whether relators' allegations require independent investigation and analysis to reveal any fraudulent behavior; whether relators' allegations involve an entirely different time period than the publicly disclosed allegations; and whether relators supplied vital facts not in the public domain." *Bellevue*, 867 F.3d at 719 (cleaned up).

Defendants principally argue that Relator presents no new information needed to uncover the fraud, only cumulative allegations based on publicly filed court documents. Defendants add that the allegations neither identify a different kind of deceit or different time frame, nor supply vital facts beyond the public domain. They point to *Cause of Action*, in which the Seventh Circuit found substantial similarity between the CTA's audit report disclosing its overcounted "vehicle revenue miles" and the allegations of fraud. 815 F.3d at 282. Although the complaint added a few allegations not covered by the audit report, the case was still "based upon" the publicly disclosed allegations. *Id.* The relator sued the same entity and described the same allegedly fraudulent conduct as the publicly disclosed information. *Id.* Further, the relator "did not conduct any independent investigation or analysis to reveal the fraud it alleges" and only "styled [the details from the audit report] as a complaint with references to the statutes and regulations that support its legal theory of fraud." *Id.*

Relator insists that its allegation—that Eddie Napleton is an Associate of the Subsidiary Defendants—is new information critical to identifying the fraudulent misrepresentations in the

Subsidiary Defendants' PPP loan applications, and that this allegation goes beyond the mere, non-actionable association described in Defendants' articles. Relator claims to have uncovered this new and material information through its own investigation into Eddie Napleton's role in managing the Subsidiary Defendants.

Relator relies on *United States ex rel. Goldberg v. Rush University Medical Center*, 680 F.3d 933 (7th Cir. 2012) and *Leveski v. ITT Educational Services, Inc.*, 719 F.3d 818 (7th Cir. 2013) to argue that they present specific allegations that should not be equivocated with general, non-actionable public information. In *Goldberg*, the Department of Health and Human Services conducted audits that indicated that teaching hospitals were billing the government for unsupervised work performed by medical residents, and a report by the Government Accountability Office confirmed the findings. 680 F.3d at 934. When relators alleged that a particular hospital billed for residents' services that had been inadequately supervised, the defendant moved to dismiss based on the public disclosure bar. *Id.* The district court granted the motion, but the Seventh Circuit vacated the dismissal because the fraud described in the audits and report was distinct from the allegations in the complaint. *Id.* at 935. The public disclosures described physicians scheduling surgeries with overlapping "critical" portions, which left medical residents unsupervised. *Id.* In contrast, the complaint alleged physicians scheduling surgeries with staggered times so that the "critical" portions did not overlap, but if a medical resident needed her supervising physician during a "non-critical" portion, the physician was occupied in another surgery and unavailable, which left medical students inadequately supervised. *Id.* The Seventh Circuit declined to interpret the public disclosures at the highest level of generality—"as covering all ways that supervision could be missing or inadequate"—because to do so would inappropriately block separate claims resting on genuinely new and material information. *Id.* at 936.

19

Similarly, in *Leveski*, the relator sued defendant for allegedly submitting false claims to the government, albeit for funding from student financial assistance programs. 719 F.3d at 819. Relator, who was a former employee, alleged that the defendant put so much pressure on increasing its metrics to obtain financial assistance funding through its compensation scheme, that it resulted in employees underreporting students' incomes, overlooking discrepancies in the students' applications, and even falsifying financial aid documents. *Id.* at 823. After she was contacted by an attorney about bringing a lawsuit, relator initiated suit for violations of the Higher Education Act (HEA) and its regulations. *Id.* at 824–25. The defendant moved to dismiss based on the public disclosure bar, and the district court granted dismissal. *Id.* at 827. The district court found that a previous lawsuit against the defendant also alleged that it had violated the HEA by compensating its employees based directly on the number of enrolled students. *Id.* However, the Seventh Circuit reversed because the relator "supplied the court with vital facts that were not alleged" in the prior cases. *Id.* at 830–32. Her experience allowed her to make allegations about how defendant tied employee's compensation to the numbers it inflated to apply for more funding, including how her office's practices and resulting compensation differed from defendant's claimed practices; she "name[d] specific individuals in positions of authority . . . who told her that recruitment and financial aid 'numbers' were all that mattered"; and she provided evidence that other factors were not considered. *Id.* The allegations with "relevant names, meetings, and other details specific to her employment" were separate from the prior litigation. *Id.* Following *Goldberg*, the Seventh Circuit in *Leveski* did not view the allegations "at too high a level of generality" so that the relator's allegations of "new tactics by [the defendant] to avoid the mandates of the HEA" could proceed. *Id.* at 833.

Relator's allegations do not parallel those in *Goldberg* and *Leveski* because they do not provide any new material information beyond what has been publicly disclosed. Relator argues that without its allegations, one cannot know what role Eddie Napleton had in managing the Subsidiary Defendants, what exercise he controlled, whether he acted as an officer or director, and which entities he did any of this for. But the definition of "Associate" does not require all these details of his association with the Subsidiary Defendants, just that he fulfilled at least one enumerated capacity. The publicly-disclosed news article states he oversaw the operations of roughly 75 franchised dealerships, which encapsulates all the Subsidiary Defendants. That is substantially similar to Relator's allegations that he was "put in charge of overseeing the dealerships on a national scale" and had managerial responsibilities over "all Subsidiary Defendants" pursuant to this role. [51] ¶¶ 97–98. Contrary to Relator's contention, it does not require the "highest level of generality" to find an overlap. It is also not "genuinely new and material" for the SAC to allege that "Eddie Napleton was responsible for managing the day-to-day operations of all Subsidiary Defendants" and to provide general examples of those responsibilities. *Id.* ¶ 98. Unlike *Goldberg*, the SAC does not provide a substantive component of fraud that is not known or inferred through the public disclosures. *See* 680 F.3d at 935–36. And unlike *Leveski*, the SAC's additional facts are not "vital" to uncovering the fraud but rather extraneous details. *See* 719 F.3d at 831–32. Rather, once again, this case is more like *Cause of Action*, where the allegations pertain to the same Defendants and describe the same allegedly fraudulent conduct that can be inferred from the public disclosures. 815 F.3d at 282.

Relator compares its research into prior court filings and resulting allegations to the "independent investigation and analysis" that prevented the public disclosure bar in *United States ex rel. Heath v. Wisconsin Bell, Inc.*, 760 F.3d 688, 691 (7th Cir. 2014). In *Heath*, the relator

worked for a business that audits telecommunications bills to identify improper charges. *Id.* at 689. The defendant was providing telecommunications services to school, but not at the same favorable pricing that it offered to government entities pursuant to a publicly disclosed agreement. *Id.* When the relator brought suit, the district court dismissed based on the public disclosure bar. *Id.* at 690. The Seventh Circuit reversed because the agreement alone did not establish fraudulent behavior. *Id.* at 691. Evidence of one transaction was not enough to establish that there was overcharging in other transactions. *Id.* The relator's claims were distinct from the public disclosure because he used his independent investigation and analysis of irregularities in the prices charged for telecommunications services. *Id.* Without it, the agreement served only to identify that a contract with a lower rate than that which was being offered existed, and which did not give rise to fraud. *Id.* at 692.

*Heath*, as well as *Leveski*, highlight the shortcoming in Relator's allegations—that without the additional information in the SAC, one can still infer the alleged fraud from the information in the public disclosures. Relator has no direct or firsthand knowledge that could constitute new and material information necessary to uncovering fraud, nor does it show independent investigation or analysis not previously known. *See Goldberg*, 680 F.3d at 936 (relator alleging "a kind of deceit that the [public disclosure] [did] not attribute to *any* teaching hospital"); *Leveski*, 719 F.3d at 832– 33 (providing "the court with vital facts" about new tactics used to commit fraud that were "based on her own knowledge"); *Heath*, 760 F.3d at 692 (holding that relator provided an allegation necessary to the fraud through his "extensive knowledge"). Its combination of information that is publicly available "styled . . . as a complaint with references to statutes and regulations that support its legal theory of fraud" is insufficient. *See Cause of Action*, 815 F.3d at 282. Because the SAC

does not allege any genuinely new and material information that is necessary to identify the alleged fraud, it is substantially similar to the public disclosures.

### C. Original Source

To overcome substantial similarity to public disclosure, Relator must qualify as an original source. The 2010 amendments changed the definition of "original source" from "an individual who has *direct and independent* knowledge of the information on which the allegations are based" to an individual "who has knowledge *that is independent of and materially adds* to the publicly disclosed allegations or transactions." *Compare* 31 U.S.C. § 3730(e)(4)(B) (2006), *with id.* § 3730(e)(4)(B) (2012). This amendment was a clarification rather than a substantive change." *Bellevue*, 867 F.3d at 718. Accordingly, case law construing the prior version of the term remains relevant to construing the amended version of Section 3730(e)(4). To satisfy this requirement, a relator's knowledge of the alleged wrongdoing must not "derive from or depend upon" the public disclosure. *Cause of Action*, 815 F.3d at 283 (cleaned up). Instead, the relator must be "someone who would have learned of the allegation or transactions independently of the public disclosure." *Id.* (citation omitted). If the relator's claims are substantially similar to the public disclosures, the relator's allegations do not materially add to the public information. *Id.*; *Bellevue*, 867 F.3d at 718.

Defendants point to the fact that Relator is an entity with no inside knowledge to argue that it could not have learned of the allegations independently of the public disclosure. Relator responds that the 2010 amendment expanded the definition of an "original source" so that an entity with no direct knowledge, such as Relator, may bring a *qui tam* action where it brings independent knowledge that adds to what was publicly disclosed. It relies on *Moore*, in which the Third Circuit held that the removal of the requirement that a relator possess "direct" knowledge shifted the focus of the analysis from the relator to the knowledge and thus expanded the definition. 812 F.3d at 299.

23

Regardless of whether the removal of "direct" knowledge requirement expands the scope of the definition of an "original source," Relator must still present knowledge that is "independent" and that "materially adds" to the publicly disclosed allegations or transactions. The inquiry here can be decided on the latter. Take *Bogina*, in which the relator alleged that the defendants participated in a scheme to sell and purchase medical equipment that involved bribes and kickbacks. 809 F.3d at 367. The defendants introduced a prior suit with similar allegations to argue for the public disclosure bar. *Id.* at 369. Although the relator alleged that he learned about the kickbacks from a third party, that he had additional false reports to present and that his allegations extended over a longer time period than the other lawsuit, the Seventh Circuit held that the "differences between the two suits [were] unimpressive." *Id.* at 370. The relator's mention of a third party did not materially expand the class of alleged buyers in the scheme, and providing one name did not aid the allegations against the defendants. *Id.* Rather, the relator merely added details about what was already known. *Id.*

Relator's allegations here suffer from the same concerns. Relator's critical factual allegations are available in the public domain. Relator claims to add new material information through detailing Eddie Napleton's role in managing the Subsidiary Defendants, based on the documents attached to the SAC. However, the details of his day-to-day responsibilities merely add details to the disclosed information regarding his position as director of operations and his responsibility for overseeing the Subsidiary Defendants. What Relator offers does not materially add to the publicly disclosed allegations against Defendants, and for that reason, Relator cannot be an original source. *Bellevue*, 867 F.3d at 718.

Because Relator is not an original source, Section 3730(e)(4)(A) bars its claims. Because the public disclosure bar resolves the motion, the Court does not reach Defendants' alternative argument for failure to state a claim.

With respect to the Defendants' request to dismiss with prejudice, it is not a fair characterization to call Relator's prior amendments "several bites at the apple." Relator first amended this case after the government declined to intervene, only to correct entity names and loan amounts. [18, 19]. It then amended a second time with Defendants' agreement and the Court's permission to remove unrelated entities. [49] at 1; [50]; [58] at 15. Ordinarily, "a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015). If the face of the complaint makes clear that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss. *Id.* at 519–20. Though it may be futile for Relator to become an original source, it is not futile for Relator to obtain genuinely new and material information that has not been publicly disclosed. Thus, Relator is given the ordinary treatment, but is cautioned to ensure that it can actually submit an amended complaint that materially changes the analysis in this opinion.

## Conclusion

For the reasons stated above, Defendants' motion to dismiss [54] is granted. Relator's Second Amended Complaint is dismissed without prejudice because the claims are barred by Title 31, United States Code, Section 3730(e)(4). The Court grants Relator leave to file a third amended complaint if such an amendment is consistent with his obligations under Federal Rule of

Civil Procedure 11.  If Relator does not file an amended complaint by November 11, 2025, then the dismissal will automatically convert to a dismissal with prejudice.

**SO ORDERED.**

Dated: October 15, 2025

                                            Sunil R. Harjani
                                            United States District Judge